The **STATE** of Oklahoma, Appellant,

v.

Chester Lee **BROOKS**, A/K/A Achisson Amenshi, and Larry Joe Brooks, Appellees.

No. S–85–117.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1988.

David L. Moss, Dist. Atty., M. Denise Graham, Susan K. Morgan, Asst. Dist. Attys., Tulsa, for appellant.

James R. Winnie, Oklahoma City, Leslie R. Reynolds, Bartlesville, for appellees.

Susan Work Haney, Oklahoma Indian Legal Services, Oklahoma City, F. Henry Habicht, II, Asst. Atty. Gen., Edward J. Shawaker, Laura E. Frossard, Attys., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., amicus curiae.

## OPINION ON REHEARING

BRETT, Presiding Judge:

Appellants, Chester Lee Brooks, a/k/a Achisson Amenshi, and Larry Joe Brooks, were charged in Tulsa County District Court, Case No. CRM–84–1026, with violating sections of the Cigarette Tax Act. Specifically, they were charged with willfully failing to produce required cigarette sales records, hindering or preventing the inspection of such records, and hindering or preventing the examination of their store in which cigarettes were kept. These acts constitute misdemeanor violations of Title 68 O.S.1981, § 315, and are punishable by twelve months' imprisonment in the county jail, or a fine not to exceed five hundred dollars ($500.00), or both. *See* 68 O.S.1981, § 317(b).

The State filed informations against appellees in district court. Appellees then filed a motion to dismiss the charges, claiming that the land on which the alleged offenses occurred is "Indian Country" (*see* 18 U.S.C. 1151(c)) over which there is no state jurisdiction. (O.R. 23–25) In accordance with the appellees' arguments, the trial judge ordered the cause dismissed. The trial judge's order was affirmed by Special District Judge Gordon McCallister. 22 O.S.1981, Ch. 18, App.Rule 6.2, Rules of the Court of Criminal Appeals. (O.R. 87–88) This case was then brought before this Court on the narrow question of whether the lower court properly dismissed for lack of jurisdiction the charges against appellees, (*see* 22 O.S.1981, Ch. 18, App.Rule 6.1, Rules of the Court of Criminal Appeals), and we affirmed the lower court's ruling. That opinion, rendered on November 7, 1986, was vacated by order on July 26, 1988, and this opinion on rehearing is delivered.

Appellees are members of the Delaware Tribe of Indians who leased some property from members of the Creek Indian Nation and operated a cigarette store or "smoke shop" thereon. On May 11, 1984, agents of the Oklahoma State Tax Commission went to appellees' smoke shop to seize unstamped cigarettes and tobacco products. One of the agents, Rick Cleary, went into the shop and purchased a carton of cigarettes on which no statutorily required Oklahoma Tax stamps were affixed. *See* 68 O.S.Supp.1984, § 302. Appellees did not inquire into his status as an Indian or non-Indian prior to making the sale. Later, the other agent, Gertie Rogers, identified herself as an agent of the Oklahoma Tax Commission and requested to enter the store pursuant to her authority under 68 O.S.1981, § 315. The attendant on duty locked the front door and refused to admit her. He told her not to return without a Federal Marshall because the land was Indian land over which the State had no jurisdiction. (O.R. 4, 5)

On May 16, Ms. Rogers signed an affidavit supporting a warrant to search appellee's establishment for unstamped cigarettes and tobacco products, and records of purchases and sales of these items. The next day, Deputy R.D. McAtee accompanied these agents to the smoke shop and attempted to execute the warrant. Appellees refused to comply and were subsequently arrested.

The sole issue before this Court is whether the district court had jurisdiction to enforce certain recordkeeping and inspection provisions of Oklahoma's Cigarette Tax Act against Indians (appellees) who sold cigarettes from an establishment located on Indian lands. Appellees' argument, both at the lower court level and on appeal, is that because they are Indians, and the

land in question is Indian Country, they are absolutely shielded from state court jurisdiction under the doctrine of "sovereign immunity." This argument, however, fails to consider the fact that in this unique area of state taxation of Indian cigarette sales, the United States Supreme Court has authorized both state imposition of taxes on sales to non- and off-reservation Indians, and state imposition of certain recordkeeping requirements designed to keep track of those sales—regardless of whether sovereign immunity would, under different circumstances, provide an absolute defense to such regulation. *See Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 155, 100 S.Ct. 2069, 2082, 65 L.Ed.2d 10 (1980). According to *Colville*, neither appellants' status as Indians, nor the status of their land as Indian Country pursuant to 18 U.S.C. § 1151(c), would provide them with a sovereign immunity "shield" from state regulation. Therefore, because the existence or non-existence of appellants' sovereign immunity is irrelevant to the determination of the particular issue at hand, we do not now address it. Instead, our focus will be on what we feel is the dispositive issue: whether the United States Supreme Court cases, which sanction the imposition of state tax and recordkeeping requirements on Indians on Indian Country who sell cigarettes to non- or off-reservation Indians, provide grounds for the state court prosecution of the charges in this case.

The United States Supreme Court has clearly espoused its view of states' attempts to impose their taxes on Indians:

> [I]n the special area of state taxation, absent cession of jurisdiction or other federal statutes permitting it, there has been no satisfactory authority for taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation, and *McClanahan v. Arizona State Tax Commission*, [411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973)], lays to rest any doubt in this respect by holding that such taxation is not permissible absent congressional consent.

*Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 1114 (1973). Thus, "[i]n the special area of state taxation of Indian tribes and tribal members, we have adopted a *per se* rule [against such a practice]." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 215 n. 17, 107 S.Ct. 1083, 1091 n. 17, 94 L.Ed.2d 244 (1987) (emphasis in original).

These cases were never intended, however, to establish "an inflexible *per se* rule precluding state *jurisdiction* over tribes and tribal members in the absence of express congressional consent." *Id.* at 215, 107 S.Ct. at 1091 (emphasis added). In fact, "under certain circumstances a State may validly assert authority over the activities of nonmembers on a reservation ... and ... in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331–332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983). Examples of those situations in which a state would be authorized to assert jurisdiction over otherwise immune tribal activities are found in *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) and *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). See *Cabazon*, 480 U.S. at 215, 107 S.Ct. at 1091.

In both *Moe* and *Colville* the Supreme Court held that a State can, even in the absence of congressional consent, "require tribal smokeshops on Indian reservations to collect state sales tax from their non-Indian customers." See *Cabazon*, 480 U.S. at 215, 107 S.Ct. at 1092. When the issue is whether an Indian selling cigarettes from a store on Indian land is subject to state regulation of their sales to non-Indians, traditional obstacles to state jurisdiction and control are simply not pertinent: "We do not believe that principles of federal Indian law, whether stated in terms of pre-emption, tribal self-government, or otherwise, authorize Indian tribes thus to market an exemption from state taxation to persons who would normally do their busi-

ness elsewhere." *Colville*, 447 U.S. at 155, 100 S.Ct. at 2082. *See also The Citizen Band Potawatomi Indian Tribe of Oklahoma v. The Oklahoma Tax Commission,* No. CIV–87–0338–W, Order of April 15 (W.D.Okla.1988) [available on WESTLAW, 1988 WL 122606]. Consequently, even if the lands at issue in the case at bar met the definition of Indian Country under 18 U.S. C. 1151(c), and appellants were, according to current law, found to be Indians, these facts would not automatically preclude state jurisdiction. According to the Court, "[w]hat the smokeshops offer these customers, and what is not available elsewhere, is solely an exemption from state taxation." *Id.* "[I]f a State's tax is valid, the State may impose at least minimal burdens on Indian businesses to aid in collecting and enforcing that tax." *Id.,* 447 U.S. at 159, 100 S.Ct. at 2084.

The United States Supreme Court has thus granted to States the authority both to tax and to impose certain recordkeeping requirements on Indians in Indian Country, regarding their sales of cigarettes to non- or off-reservation Indians. *See Colville,* 447 U.S. at 161, 100 S.Ct. at 2085.[1] While we believe that implicit in this grant of authority is the concomitant power of enforcement through the state court system (*see also Citizen Band Potawatomi*)—which power the State was attempting to exercise in the instant case—such authority is not unconditional. Because the informations in this case did not relate specifically to appellees' cigarette sales to non-Indians or off-reservation Indians, and thus did not meet the United States Supreme Court prerequisite to the exercise of state tax authority over Indians on Indian land, we hold that the State of Oklahoma did not have the power to prosecute and the district court did not have jurisdiction to adjudicate this controversy. Whether these charges, if addressed solely to appellees' sales to non-Indians and off-reserva-

tion Indians, would be considered valid under current United States Supreme Court precedent is not before this Court.

For the foregoing reasons, Case No. CRM–84–1026 is AFFIRMED.

PARKS, J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting:

I dissent. Even if the Creek allotment in this case were Indian Country, *c.f. Ex parte Nowabbi,* 60 Okl.Cr. 111, 61 P.2d 1139 (1936),[1] I do not believe that the defendants in this case are entitled to any consideration for immunity from prosecution. They are Delaware Indians who leased a Creek Tribal allotment to operate a public business. The Supreme Court has determined that Indians who reside on a reservation but are not enrolled in the governing Tribe are not immune from taxation by the States. *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). If Indians in that situation are not immune from direct taxation by the State, I perceive no basis to consider immunity for these defendants who are not enrolled as members of the Creek Tribe. Furthermore, the State is not even trying to collect taxes from Indians. Rather, it is simply attempting to enforce its right to review records which it may require Indians to keep, even if those Indians are immune from taxation. *Ibid.*

The majority holds that, "Because the charges in this case did not relate specifically to appellees' cigarette sales to non-Indians or off-reservation Indians, *and thus did not meet the United States Supreme Court prerequisite to the exercise of state tax authority over Indians on Indian land,*" (emphasis added) the State lacked

---

1. An example of a valid recordkeeping scheme can be found in *Colville,* 447 U.S. at 159, 100 S.Ct. at 2084.

1. The Oklahoma Supreme Court has disapproved and withdrawn this case in part. *State ex rel. May v. Seneca–Cayuga Tribe of Oklahoma,* 711 P.2d 77 (Okla.1985). To the extent that *Nowabbi* may be construed to prevent lands

in what was formerly Indian Territory which were allotted to tribes other than the Five Civilized Tribes from coming within the federal definition of Indian Country, I agree that the opinion was overly broad. However, this case involves land allotted to the Creek Tribe, which was among the Five Civilized Tribes.

711

jurisdiction. Aside from the fact that the Supreme Court has not announced the "prerequisite" on which this holding turns, the defendants in this case could not have claimed immunity from prosecution in any event. The information filed in this case recited sufficient facts to state a crime under Oklahoma law, and I would reverse the decision of the District Court.