**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Betty Jean HEATH, Defendant-
Appellant.**

**No. 74–1624.**

United States Court of Appeals,
Ninth Circuit.

Dec. 26, 1974.

Paul R. Romain, Portland, Or., for defendant-appellant.

Tommy Hawk, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before BROWNING and TRASK, Circuit Judges and JAMESON,* District Judge.

## OPINION

JAMESON, District Judge:

Defendant-appellant, Betty Jean Heath, appeals from a conviction for voluntary manslaughter following a non-jury trial.

### Proceedings in District Court

On August 3, 1973 appellant was charged by indictment as follows:

"That on or about July 18, 1973, at the Warm Springs Indian Reservation, within the Indian Country, in the District of Oregon, Betty Jean Heath, defendant herein, an Indian, did unlawfully and with malice aforethought, shoot and kill Teeman Heath, a human being and enrolled member of the Warm Springs Indian Tribe; in violation of Sections 1111 and 1153, Title 18, United States Code."

During the trial on November 8, 1973 it was stipulated that the "defendant is an Indian and that the acts that are alleged in the indictment did occur within Indian country on the Warm Springs Reservation". Appellant was found guilty of the lesser included offense of voluntary manslaughter and on January 21, 1974 was sentenced to six years imprisonment pursuant to 18 U.S.C. § 4208(a)(2).

On January 25, 1974 defendant filed a notice of appeal. On June 10, 1974 she filed a motion for a new trial and on June 11 a motion for arrest of judgment. Both motions were denied by written order on August 15, 1974 on the ground that the district court no longer had jurisdiction.[1]

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. No appeal was taken from this order. Appellant agrees that this court now has jurisdiction and contends that the jurisdictional issues she raised in her motion for new trial are now properly before this court.

Appellant's motions were based on the grounds that (1) the court lacked jurisdiction by reason of the fact that appellant was a "terminated Klamath Indian" and no longer an Indian within the meaning of 18 U.S.C. §§ 1152 and 1153; (2) the indictment was insufficient to confer jurisdiction under 18 U.S.C. § 1152 because it failed to allege that the victim was an Indian; and (3) the failure to charge appellant under § 1152 rather than § 1153 constituted prejudicial error. These same grounds are urged on this appeal.

## Issues on Appeal

Four issues are raised by the respective parties:

(1) Whether the defendant, following her conviction and sentencing, may for the first time challenge the jurisdiction of the district court and the sufficiency of the indictment;

(2) Whether a "terminated Klamath Indian" may be indicted for murder under 18 U.S.C. § 1153;

(3) Whether an indictment charging defendant with the murder of an "enrolled member of the Warm Springs Indian Tribe" on the Warm Springs Reservation is sufficient to confer Federal jurisdiction pursuant to 18 U.S.C. § 1152; and

(4) Whether indicting the defendant under 18 U.S.C. § 1153 rather than 18 U.S.C. § 1152 constituted prejudicial error.

## Statutes Involved

18 U.S.C. § 1152 reads:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

18 U.S.C. § 1153 reads in pertinent part:

"Any Indian who commits against the person . . . of another Indian or other person any of the following offenses, namely, murder, manslaughter, . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

18 U.S.C. § 1111 defines murder in the first and second degrees and prescribes the punishment for persons who commit the offense "[w]ithin the special maritime and territorial jurisdiction of the United States".

18 U.S.C. § 1112 provides:

"(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"Voluntary—Upon a sudden quarrel or heat of passion.

.     .     .     .     .

"(b) Within the special maritime and territorial jurisdiction of the United States,

"Whoever is guilty of voluntary manslaughter, shall be imprisoned not more than ten years."

Thus, appellant could be prosecuted for violation of §§ 1111 and 1112 under § 1153 if the appellant were an Indian, and under § 1152 if her husband were an Indian and appellant a non-Indian.[2] If

2. The Federal Government has exclusive jurisdiction over offenses committed by or against Indians on the Warm Springs Reservation. 18 U.S.C. § 1162(a) granted jurisdiction to the State of Oregon over offenses committed by or against Indians in all Indian country "except the Warm Springs Reservation".

neither were an Indian the federal court would lack jurisdiction.[3]

### Timeliness of Challenge

■ Appellee contends that appellant may not now challenge the jurisdiction of the district court or the sufficiency of the indictment, arguing that appellant waived these defenses by failing to raise them at the trial and by stipulating that she is an Indian. Rule 12(b)(2) of the Federal Rules of Criminal Procedure, however, provides in relevant part: "Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

While other defenses and objections based on defects in the prosecution or in the indictment are waived by failure to raise them before trial, lack of jurisdiction over the subject matter is not subject to waiver and may be raised at any time. *See* Pon v. U. S., 168 F.2d 373, 374 (1 Cir. 1948); Sewell v. U. S., 406 F.2d 1289, 1292 (8th Cir. 1969). Since the issues raised by appellant concern the subject matter jurisdiction of the district court, they may be raised for the first time on appeal.

### Effect of Klamath Termination Act

The Klamath Termination Act, 25 U.S.C. § 564 et seq. states in § 564 that the purpose of the Act "is to provide for the *termination of Federal supervision over* the trust and restricted property of the Klamath Tribe of Indians . . . and of *the individual members thereof* . . . ". (Emphasis added). § 564q provides that:

" . . . individual members of the tribe shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians and, except as otherwise provided in this Act, all statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe, and the laws of the several States shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdiction".

This court in Klamath and Modoc Tribes v. Maison, 338 F.2d 620, 622 (9th Cir. 1964) recognized that,

" 'The purpose of the Klamath Termination Act to (a) end federal supervision, (b) to remove from the Indians their special status as Indians, and (c) make laws applicable to them "in the same manner as they apply to other citizens" are express and unequivocal in the terms of the Act.' "

*See also* United States v. Burland, 441 F.2d 1199, 1202–1203 (9 Cir. 1971); cert. den. 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 77 (1971).

■ Felix Cohen in his Handbook of Federal Indian Law (1942) stated that "in dealing with Indians the Federal Government is dealing primarily not with a particular race as such but with members of certain social-political groups towards which the Federal Government has assumed special responsibilities". *Id.* at 5. Statutes like 18 U.S.C. § 1153 exemplify the "special responsibility" that the Government has assumed with respect to Indians. The Klamath Termination Act, as this court recognized in *Maison,* was intended to end the special relationship that had historically existed between the Federal Government and the Klamath Tribe. While anthropologically a Klamath Indian even after the Termination Act obviously remains an Indian, his unique status vis-a-vis the Federal Government no longer exists. Pursuant to 25 U.S.C. § 564q, Klamath Indians are subjected to state laws and are to be dealt with by the law no differently than any other ·citizen of a state. We conclude accordingly that 18 U.S.C. § 1153 cannot serve to confer Federal jurisdiction with respect to crimes committed by terminated Klamath Indians.

**3.** For a more detailed analysis of §§ 1152 and 1153, see Mull v. United States, 402 F.2d 571, 573 (9 Cir. 1968), cert. den. 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969).

### Sufficiency of the Indictment

 The indictment did not refer to § 1152 as a basis for Federal jurisdiction. Appellant contends that even if it did specify § 1152 the indictment would be insufficient because it did not allege that the victim of the alleged offense was an Indian. The indictment did, however, charge appellant with killing "Teeman Heath, a human being and *enrolled member of the Warm Springs Indian Tribe*". (Emphasis added).

Rule 7(c) of the Federal Rules of Criminal Procedure provides that "the indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." With respect to a post-trial challenge to the sufficiency of an indictment, this court stated:

> "After trial, the indictment is sufficient if the necessary facts appear in any form or by fair construction can be found within its language. (Citations omitted). The true test is whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." United States v. Cluchette, 465 F.2d 749, 752–753 (1972).

Applying this test, we conclude that terming the victim an "enrolled member of the Warm Springs Indian Tribe" was sufficient for purposes of alleging Federal jurisdiction pursuant to 18 U.S.C. § 1152. In addition, we find that the testimony elicited during the trial by both parties established that Teeman Heath was in fact an Indian.

### Prejudice

 Finally, appellant contends that she was prejudiced by the fact that the

4. Had appellant asserted her contention that she is not an Indian before trial, the Government would have had an opportunity to change the indictment to allege a violation of § 1152 instead of § 1153. Instead appellant stipulated that she was an Indian, making the offense cognizable under § 1153.

5. In *Henry* the defendant Indian was charged with rape, an offense specified in § 1153.

indictment charged a violation of § 1153 instead of § 1152. It is clear, however, that appellant was fully apprised of the charge against her. The indictment set forth the elements of the offense necessary for a conviction under either § 1152 or § 1153. Her own counsel elicited testimony to the effect that Teeman Heath was a Warm Springs Indian. It is inconceivable that appellant would have presented any different defense to the charge of murder had she been indicted under § 1152 instead of § 1153.[4] The error in the indictment was harmless beyond a reasonable doubt. *See* Henry v. United States, 432 F.2d 114 (9 Cir. 1970), modified on other grounds, 434 F.2d 1283 (9 Cir. 1971), cert. den. 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971).[5]

Affirmed.

The indictment alleged an offense in violation of § 1152 instead of § 1153. The court held that the defendant had been indicted "under charges which are essentially the elements necessary for a conviction under § 1153" and concluded that, "Although the indictment made erroneous reference to § 1152, appellant Henry was not prejudiced . . . [and] the error was harmless beyond a reasonable doubt".